UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PEDRO COLLAZO,

|                          |                          |
|--------------------------|--------------------------|
| Plaintiff,               | **OPINION & ORDER**      |
|                          | **ON MOTION TO DISMISS** |
| - against -              |                          |
|                          | No. 25-CV-6399 (CS)      |
| THE BANK OF AMERICA INC. (BANA), |                  |
|                          |                          |
| Defendant.               |                          |

-------------------------------------------------------------x

Appearances:

Pedro Collazo
New Windsor, New York
*Pro Se Plaintiff*

Madeline M. Rutledge
Winston & Strawn LLP
New York, New York
*Counsel for Defendant*

Seibel, J.

Before the Court is Defendant's motion to dismiss.  (ECF No. 13.)  For the following

reasons, the motion is GRANTED.

## I.    BACKGROUND

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Complaint, (ECF

No. 1-1 ("Compl.")), Amended Complaint, (ECF No. 11 ("AC")), and memorandum in

opposition to the motion, (ECF No. 15 ("P's Opp.")).  *See Voltaire v. Westchester Cnty. Dep't of*

*Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *3 (S.D.N.Y. Aug. 29, 2016) ("[A] court is

permitted to consider factual allegations in *pro se* plaintiffs' preceding complaints in order to

supplement those in amended complaints.");  *Washington v. Westchester Cnty. Dep't of Corr.*,

No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may consider facts

from *pro se* plaintiff's original complaint even if they have not been repeated in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").[1]  I also consider the exhibits to the Complaint and AC.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

### A.    Facts

On July 17, 2020, Plaintiff Pedro Collazo purchased a home at 36 Myrtle Avenue in New Windsor, New York, (the "Property"), through a first-time, low-income homeowner assistance program.  (AC ¶ 3.)  Defendant Bank of America, N.A.,[2] is the loan servicer and escrow handler on Plaintiff's mortgage.  (*Id.* ¶ 2; Compl. ¶ 2.)  When Plaintiff first moved to the Property, his monthly payment including principal, interest, taxes, and insurance ("PITI") was $892.42.  (AC ¶ 4.)

In February 2021, Plaintiff's PITI payment was raised to $1,166.17.  (*Id.*)  Plaintiff disputed the increase and made a service request to Defendant to review the payment and escrow account.  (*Id.* ¶ 5.)  After review, Defendant reduced Plaintiff's payment to $1,048.97.  (*Id.*)  In

---

[1] Unless otherwise indicated, case quotations omit internal citations, quotation marks, alterations and footnotes.  The Court will send Plaintiff copies of any unpublished decisions cited in this ruling.

[2] Plaintiff originally named "The Bank of America" as the defendant in this action.  (*See* Compl.)  When he filed his AC, he named "The Bank of America Inc. (BANA)" as the defendant.  (*See* AC.)  Defendant represents that the proper legal entity is Bank of America, N.A. (*See* ECF No. 14 ("D's Mem.") at 1 n.1.)  Accordingly, the Court refers to Defendant by its proper name, Bank of America, N.A. ("BANA").

August 2024, Plaintiff's payment was increased to $1,455.29. (*Id.*) Plaintiff made another service request to Defendant for review of the payment and escrow account. (*Id.* ¶ 6.) Plaintiff also requested tax documents from the county tax assessor, the school district tax assessor, and the homeowners' insurance provider. (*Id.* ¶ 7.)

Plaintiff received a response from Cynthia Pinter, the tax collector in the Newburgh school tax office, who told Plaintiff that his taxes had only gone up twenty dollars from the year prior and that the office had received additional payments in his name for property that he did not own, including lots 13-14-16 and 13-14-17. (*Id.* ¶ 9; ECF 11-1 at 65.)[3] She explained that the tax office had not accepted those payments and advised him to confirm with Defendant what parcels they had on record for Plaintiff and to speak with someone in Defendant's tax escrow department to get an escrow analysis. (AC ¶ 9; ECF 11-1 at 65.) Plaintiff also received documents from the school and county tax assessors, which revealed that Defendant had been paying school taxes on multiple lots that Plaintiff did not own. (AC ¶¶ 8, 10-11.) Plaintiff requested a PITI payment history from Defendant and received a report that showed that Defendant had been receiving refunds of the additional tax payments for five years. (*Id.* ¶ 12.)

Plaintiff made another service request to Defendant, asking them to correct the error such that school tax payments would be made solely for the Property. (*Id.* ¶ 13.) After review, Defendant reduced the PITI payment from $1,455.29 to $1,026.14. (*Id.* ¶ 14.) Plaintiff also requested that the funds returned by the tax office be returned to him and that the properties he did not own be removed from his account, but he alleges that the request was denied. (*Id.* ¶¶ 15, 20.) Defendant's letter response, dated February 27, 2025, explained that while incorrect parcels

---

[3] Citations to the exhibits attached to the AC use the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

had been inadvertently added to Plaintiff's account, the payments for those parcels had come from corporate advances, so that there was no refund due to Plaintiff. (ECF No. 11-1 at 121.) Plaintiff filed a complaint with the New York State Department of Financial Services ("NYSDFS"), but it responded that it could not assist him. (AC ¶¶ 16, 19; *see* ECF No. 11-1 at 99-100, 116-17.) Plaintiff also filed a complaint with the New York State Attorney General ("AG"), which recommended that Plaintiff hire an attorney. (AC ¶¶ 16, 17.)

On July 3, 2025, Plaintiff again reached out to the Orange County tax assessor's office to check what properties he owns. (*Id.* ¶ 21.) The tax assessor's office reported that Plaintiff did not own lots 13-14-16 or 13-14-17, but he did own lots 13-14-12 and 13-14-13, and provided documentation to verify the same. (*Id.* ¶¶ 23-24.) Plaintiff alleges that Defendant has overpaid $8,091.07 in taxes on the properties he does not own. (*Id.* ¶ 44.)[4]

### B.    Procedural History

On July 11, 2025, Plaintiff commenced this action in the New York State Supreme Court, County of Orange, by filing a complaint against Defendant BANA. (*See* ECF No. 1-1.) On August 4, 2025, Defendant removed the action to this Court. (ECF No. 1.) On August 25, 2025, Defendant filed a pre-motion letter in anticipation of its motion to dismiss, (ECF No. 6), and after Plaintiff responded, (ECF No. 8), the Court held a pre-motion conference, at which it encouraged the parties to exchange information in hopes of an early resolution but also granted

---

[4] In his original Complaint, Plaintiff alleged that Defendant still had him paying taxes on parcels he did not own, (Compl. ¶ 23), but he dropped that allegation from the AC, which was filed after a conference with counsel for Defendant, (AC ¶ 28), that the Court had encouraged. He revived that contention in his opposition, (P's Opp. ¶ 32), but does not provide facts rendering it plausible, given that his AC makes clear that Defendant acknowledged the error, (ECF No. 11-1 at 121), and that the most recent documentation attached to the AC shows that Defendant, from fall 2025 into 2026, was collecting and paying real estate taxes only on two parcels, the parcel numbers of which correspond with the two lots he owns (13-14-12 and 13-14-13), (*see* AC ¶ 23; ECF No. 11-1 at 134-40).

Plaintiff leave to amend, (*see* Minute Entry dated Sept. 24, 2025).  Plaintiff filed his AC on November 27, 2025, (ECF No. 11), and the instant motion followed, (ECF No. 13).

## II.      LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*). Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## III.    DISCUSSION

### A.    Real Estate Settlement Procedures Act ("RESPA") and Regulation X[5]

Plaintiff brings three federal claims under RESPA.

#### 1.    12 C.F.R § 1024.17

Plaintiff alleges Defendant violated 12 C.F.R. § 1024.17, which is the implementing regulation for the section of RESPA found at 12 U.S.C. § 2609, by making an incorrect analysis of the amount needed for escrow, increasing his payments, and including in those payments school property taxes for properties that he did not own. (AC at 1.) Defendant argues that there is no private right of action under 12 U.S.C. § 2609 or 12 C.F.R. § 1024.17, and that even if there were, Plaintiff fails to allege facts showing that BANA failed to comply with any of its obligations under that section. (D's Mem. at 3-4.) In his opposition, Plaintiff does not address

---

[5] The Real Estate Settlement Procedures Act's implementing regulations are collectively called "Regulation X." *See Owens v. Select Portfolio Servicing, Inc.*, No. 25-CV-622, 2026 WL 1602194, at *3 n.3 (E.D.N.Y. June 4, 2026).

Defendant's argument that there is no private right of action under 12 C.F.R. § 1024.17 and instead argues there is a private right of action under § 1024.35. (P's Opp. at 9-10.) But Plaintiff does argue that he states a claim under § 1024.17 because he alleges that Defendant performed an inaccurate escrow analysis that it refused to correct, resulting in "[s]hortages and deficiencies, increase[s] in monthly mortgage payments and additional money taken from Plaintiff['s] account." (*Id.* ¶ 26.)

Although Plaintiff does not mention § 2609 of RESPA in his original complaint or the AC, the section he alleges Defendant violated, 12 C.F.R. § 1024.17, (AC at 1; *see* P's Opp. ¶ 26), is, as mentioned, the implementing regulation of 12 U.S.C. § 2609, *see Manfre v. Fay Servicing, LLC*, No. 24-CV-6067, 2026 WL 807179, at *5 (E.D.N.Y. Mar. 23, 2026). "[T]he Second Circuit has not addressed the issue, [but] the Fourth, Fifth, and Seventh Circuits, as well as most courts in this Circuit, have concluded that there is no private right of action under 12 U.S.C. § 2609 or 12 C.F.R. § 1024.17." *Id.* (collecting cases); *see Owens*, 2026 WL 1602194, at *6; *Herman v. Mr. Cooper Grp. Inc.*, No. 22-CV-8952, 2023 WL 6960283, at *2 & n.2 (S.D.N.Y. Oct. 20, 2023); *see also Romain v. Webster Bank N.A.*, No. 23-CV-5956, 2025 WL 50919, at *2-3 (E.D.N.Y. Jan. 8, 2025) (acknowledging that other courts have held there is no private right of action for a violation of § 2609 or its implementing regulation but declining to address issue because plaintiffs failed to allege violation of statute), *aff'd*, No. 25-316, 2025 WL 3537344 (2d Cir. Dec. 10, 2025) (summary order). I agree with the reasoning of the other courts that have concluded that there is no private right of action under 12 U.S.C. § 2609 and 12 C.F.R. § 1024.17 and find the same. *See Dolan v. Fairbanks Cap. Corp.*, 930 F. Supp. 2d 396, 418 (E.D.N.Y. 2013) (no private right of action exists under § 2609 because section is not included in

statute of limitations provision and Congress only provided for administrative remedy even after courts had found no private right of action).

Accordingly, because there is no private right of action, Plaintiff's claim under § 1024.17 must be dismissed.

### 2.      12 U.S.C. § 2607

Plaintiff also alleges that Defendant violated 12 U.S.C. § 2607 by failing to refund him the money returned to Defendant by the school tax assessor.  (AC at 1.)  Defendant argues that Plaintiff's allegations concern conduct outside the scope of § 2607 because he does not allege any referral arrangement, kickback or prohibited fee splitting.  (D's Mem. at 4-5.)

Section 2607(a) of RESPA prohibits loan servicers from paying or receiving fees or kickbacks pursuant to any agreement or understanding for referrals of business related to real estate settlement, *see* 12 U.S.C. § 2607(a), and subsection (b) provides:  "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed," *id.* § 2607(b).  "The Supreme Court [has] made clear . . . that § 2607(b) proscribes only the splitting of fees between two or more persons and does not provide a remedy when fees are unearned but not split." *Arace v. Quicken Loans, Inc.*, No. 15-CV-382, 2016 WL 390088, at *1 (S.D.N.Y. Feb. 1, 2016) (citing *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 638 (2012)).  In other words, § 2607 does not "reach a single provider's retention of an unearned fee." *Id.* at *2.  Thus, to state a claim under § 2607, a plaintiff must "demonstrate that a charge for settlement services was divided between two or more persons." *Id.*

8

Plaintiff attempts to fit this case under subsection (b) by arguing that Defendant "split[] the fees of paying school taxes between plaintiff and a property Plaintiff does not own," (P's Opp. ¶ 29), but he does not allege that a charge for settlement services was split between two persons. Although Plaintiff argues that he had to pay for another person's property taxes, perhaps suggesting that the two persons involved were himself and the owner of the other properties, (*id.* ¶ 30), § 2607 is clearly meant to prohibit the splitting of a fee for settlement services between the loan servicer and another person, *see* 12 U.S.C. § 2607(b) (prohibiting splitting charges received for rendering real estate settlement services). The school tax is not a fee for settlement services,[6] and even if it were, it was not split between the loan servicer and another. And to the extent Plaintiff argues that Defendant violated § 2607 by retaining the funds returned by the school tax assessor, that conduct does not fall under § 2607 because (even if the tax payment were a "fee") that section does not reach a single provider's retention of an unearned fee. *See Arace*, 2016 WL 390088, at *2. In short, because the challenged school taxes do not constitute a fee for settlement services, *see Bloom*, 865 F. Supp. at 1381-82 ("In order to state a claim under RESPA, plaintiffs must establish that the [fees] at issue constitute charges rendered at or in relation to settlement."), and because Plaintiff does not contend that Defendant split them with anyone else, he fails to state a claim under § 2607(b), *cf. Freeman*, 566 U.S. at 638 ("Because petitioners do not contend that respondent split the challenged charges with

---

[6] The term "settlement services" includes "'any service provided in connection with a real estate settlement.'" *Cohen v. J.P. Morgan Chase & Co.*, 608 F. Supp. 2d 330, 345 (E.D.N.Y. 2009) (quoting 12 U.S.C. § 2602(3)). A "settlement" is "'the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan,'" *i.e.*, the "closing" or "escrow" process. *Id.* (quoting 24 C.F.R. § 3500.2). "Where the fees or charges at issue are imposed *after* settlement, RESPA is inapplicable." *Bloom v. Martin,* 865 F. Supp. 1377, 1382 (N.D. Cal. 1994) (emphasis in original); *see Cassese v. Wash. Mut., Inc.*, No. 05-CV-2724, 2007 WL 9723132, at *5 (E.D.N.Y. Sept. 7, 2007).

anyone else, summary judgment [on § 2607(b) claim] was properly granted in favor of respondent."); *Saunders v. First Priority Mortg. Inc.*, No. 06-CV-586, 2013 WL 12417659, at \*3 (W.D.N.Y. Feb. 7, 2013) (granting motion for summary judgment where plaintiff failed to allege that a charge to plaintiff was divided between defendant and any other entity).[7]

Plaintiff similarly fails to state a claim under § 2607(a), because he does not allege that Defendant received the excess funds "pursuant to any agreement or understanding . . . that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person," 12 U.S.C. § 2607(a), such that it could be considered a kickback or fee in violation of the statute, *see Bongiovanni v. PennyMac Corp.*, No. 19-CV-3260, 2021 WL 1193043, at \*6 (E.D.N.Y. Mar. 30, 2021) (explaining that violation of § 2607(a) requires "(1) a payment or thing of value, (2) given and received pursuant to an agreement to refer settlement business, and (3) an actual referral" and finding plaintiff failed to state claim where he did not allege existence of referral agreement).

Accordingly, Plaintiff's claim under § 2607 is dismissed.

### 3.    12 C.F.R. § 1024.35

Plaintiff also alleges that Defendant violated 12 C.F.R. § 1024.35 by requiring him to pay an additional advanced deposit and monthly PITI payments and splitting the fees, *i.e.*, school taxes, between him and a property he does not own.  (AC at 1-2.)  Defendant argues Plaintiff fails to state a claim under § 1024.35 because he does not allege that he served a compliant

---

[7] In his initial complaint, Plaintiff alleged Defendant also violated 12 C.F.R. § 1024.14(c) by failing to return the money that had been refunded.  (Compl. ¶ 28.)  Section 1024.14 is the implementing regulation for § 8 of RESPA, codified at 12 U.S.C. § 2607, and as such prohibits the same conduct as is prohibited by that statute.  *See* 12 C.F.R. § 1024.14(a) ("Any violation of this section is a violation of section 8 of RESPA."); *id.* § 1024.14(c) (prohibiting split of charges except for actual services performed).  Thus, any claim under 12 C.F.R. § 1024.14(c) fails for the same reasons as Plaintiff's claim under § 2607.

Notice of Error ("NOE") on Defendant at its designated address, and because Plaintiff's exhibits demonstrate that Defendant investigated the alleged issues, corrected its escrow projections, applied refunds, and issued written determinations explaining its conclusions, as required by the statute and regulation.  (D's Mem. at 5-6.)  Plaintiff argues that Defendant violated the statute because it failed to correct the error once notified of it.  (P's Opp. ¶¶ 31-32.)

"12 C.F.R. § 1024.35 allows borrowers to notify mortgage servicers of possible account errors and requires servicers to acknowledge and respond to such notifications."  *Ramirez v. Wells Fargo Bank, N.A.*, No. 19-CV-5074, 2021 WL 9564023, at *7 (E.D.N.Y. Mar. 24, 2021) (citing 12 C.F.R. § 1024.25).  "Once notified, a servicer must either investigate and respond to the borrower, or correct the error, unless an exception applies."  *Id.*; *see* 12 C.F.R. § 1024.35(e) (servicer must respond to error by either correcting error or conducting reasonable investigation and providing borrower with written notification including statement that it determined no error occurred and reasoning).

But to trigger a loan servicer's liability under § 1024.35 (or the corresponding section of RESPA, § 2605(e)), a plaintiff must submit an NOE that complies with the regulation's requirements.  *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 (2d Cir. 2014) (*per curiam*) ("[A mortgage servicer's] duties under RESPA are triggered if it receives a qualified written request ("QWR"), defined as correspondence that identifies a borrower's account and includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.");[8] *In re Nasser*, No. 17-40254, 2020 WL 5985423, at *2-3 (Bankr. E.D.N.Y. Oct. 8,

---

[8] An NOE is a type of QWR.  *See Manfre*, 2026 WL 807179, at *3 ("RESPA's implementing regulations define two types of QWRs," including notices of errors); *Jackson v.*

2020) (to the same effect); *cf. Miller v. HSBC Bank U.S.A., N.A.*, No. 13-CV-7500, 2015 WL 585589, at *10 (S.D.N.Y. Feb. 11, 2015) (dismissing RESPA claim where plaintiff failed to allege in non-conclusory terms that she sent NOE that complied with RESPA); *Fournier v. Bank of Am. Corp.*, No. 13-CV-702, 2014 WL 421295, at *5 (N.D.N.Y. Feb. 4, 2014) (same).  To qualify as an NOE under the regulation, the notice must assert the error and include "the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."  12 C.F.R. § 1024.35(a).

Additionally, a servicer may establish a designated address for NOEs, which must be provided to the borrower by written notice.  *Id.* § 1024.35(c).  If a servicer properly designates an address for NOEs, "the borrower must send the [NOE] to that office, and a letter sent to a different address is not a [NOE], even if an employee at that address responds to that letter." *Nasser*, 2020 WL 5985423, at *3.  Accordingly, a servicer's duties under RESPA are not triggered if the borrower fails to send the NOE to the designated address.  *See Mack v. ResCap Borrower Claims Tr.*, 678 F. App'x 10, 14-15 (2d Cir. 2017) (summary order) (servicer's duty was never triggered because appellant failed to send correspondence to address designated for QWRs); *Roth*, 756 F.3d at 181-83 (district court properly dismissed claims on basis that letters were not sent to servicer's designated QWR address and thus were not QWRs under RESPA); *Nasser*, 2020 WL 5985423, at *3-4 (dismissing RESPA claim where plaintiff failed to plausibly allege letter was sent to QWR designated address).

Here, Defendant designated an address for error notices in its onboarding disclosure and monthly statements.  (*See* ECF No. 11-1 at 17, 20.)  *See Roth*, 756 F.3d at 182 (servicer

---

*Caliber Home Loans*, No. 18-CV-4282, 2019 WL 3426240, at *1 (E.D.N.Y. July 30, 2019) ("Qualified written requests can be classified as requests for information or notices of error.").

designated QWR address in each of her mortgage statements).  Plaintiff alleges he made "service requests" to dispute the increases in his PITI payments and request that Defendant stop paying taxes on properties he did not own.  (AC ¶¶ 5-6, 13).  He did not attach these requests to his complaint or AC; he attached only the complaints he filed with the AG and NYSDFS.  (ECF No. 11-1 at 99-100, 102-04.)  In his opposition, Plaintiff further alleges that in 2021 he made a "Qualified Service request by letter informing the Defendant that the increase [wa]s made in error through a faulty analysis of the escrow account," (P's Opp. ¶ 9), after which his monthly payment was reduced, (*id.* ¶ 10).  After his monthly payment was again increased, he "made a second written QWR . . . , sent an email, and called the Defendant to inform them of the error and requested they cease paying school taxes from Plaintiff['s] account on properties not owned by plaintiff and to return the additional funds taken."  (*Id.* ¶ 13.)  He further alleges that he made a third QWR after receiving the account history and again requested that Defendant cease paying taxes on the additional properties, return the refunds, and reduce the monthly payments.  (*Id.* ¶¶ 15-16.)  He alleges he made a fourth QWR seeking the same, which Defendant denied on December 31, 2024 and May 22, 2025.  (*Id.* ¶ 18.)  But nowhere does he allege that he sent any of these QWRs to Defendant's designated address.

Courts have dismissed claims under § 1024.35 where plaintiffs, including *pro se* plaintiffs, failed to allege facts demonstrating that their NOEs complied with the regulation's requirements.  *See Figueroa v. HSBC Bank USA, N.A.*, No. 16-CV-893, 2017 WL 1185263, at *6 (N.D.N.Y. Mar. 29, 2017) (conclusory allegation that plaintiff submitted timely QWR on certain date insufficient for court to determine whether document meets legal definition of QWR and fails to state plausible RESPA claim); *Miller*, 2015 WL 585589, at *10 (plaintiff failed to state claim where alleged only that she sent QWR to defendant); *Fournier*, 2014 WL 421295, at *5

(court concluded letters sent to defendant were not QWRs within meaning of RESPA where she failed to allege in nonconclusory terms that alleged QWRs complied with statutory definition); *see also Hamadeh v. Cenlar FSB*, No. 25-CV-5401, 2026 WL 1328606, at *3 (S.D.N.Y. May 13, 2026) (dismissing RESPA claim where complaint did not plausibly allege existence of QWR absent more detail about batches of correspondence with defendant). Courts have also dismissed where plaintiffs have failed to allege that they sent their letters to their servicer's designated address for NOEs. *See Chavous v. M&T Bank*, No. 25-CV-1247, 2026 WL 1382799, at *5 (N.D.N.Y. May 18, 2026), *appeal filed*, No. 26-1516 (2d Cir. June 1, 2026); *Hamadeh*, 2026 WL 1328606, at *4; *Lawtone-Bowles v. Baum*, No. 25-CV-1218, 2025 WL 2295253, at *3-4 (S.D.N.Y. Aug. 6, 2025). Although Plaintiff provided some information as to what his NOEs contained, he has not pleaded that they contained everything the statute requires, and in any event he has failed to allege that he sent them to Defendant's designated address. By failing to allege that the service requests he made included the required information and were sent to Defendant's designated address, Plaintiff has failed to plausibly allege he submitted an NOE within the meaning of the regulation or that Defendant's duties thereunder were triggered.

Plaintiff argues that Defendant had notice of his service requests and the errors flagged therein because it responded to his requests, (P's Opp. ¶ 31), but as explained, even if an employee of the defendant responds to a plaintiff's letter, the letter will not meet the statute or regulation's definition of an NOE if the plaintiff did not send it to the servicer's designated address. *See Roth*, 756 F.3d at 182; *Nasser*, 2020 WL 5985423, at *3; *cf. Mack*, 678 F. App'x at 15 (servicer's duty under RESPA never triggered where appellant did not send letter to designated address even though sent to another valid address for servicer). If a plaintiff's correspondence does not meet the definition of an NOE, then the defendant has no obligation

14

under RESPA or Regulation X and cannot be liable.  Thus, Plaintiff's claim under § 1024.35

must be dismissed.

Even if Plaintiff had adequately alleged that his service requests were sent to the

designated address and thus constituted NOEs, Plaintiff would fail to state a claim under this

section.  As set forth above, under Regulation X, once a servicer receives an NOE, it must either

correct the error identified by the borrower or

> [c]onduct[] a reasonable investigation and provid[e] the borrower with a written
> notification that includes a statement that the servicer has determined that no error
> occurred, a statement of the reason or reasons for this determination, a statement
> of the borrower's right to request documents relied upon by the servicer in
> reaching its determination, information regarding how the borrower can request
> such documents, and contact information, including a telephone number, for
> further assistance.

12 C.F.R. § 1024.35(e).  Plaintiff alleges Defendant violated § 1024.35 by failing to correct the

errors of which he complained, including the increase in his PITI payments, and that Defendant

was paying taxes for properties that Plaintiff did not own.  (P's Opp. ¶¶ 12, 25.)  But Defendant

corrected the errors of the increased PITI payments by reevaluating the escrow and reducing

Plaintiff's monthly payments.  (*See* P's Opp. ¶¶ 10, 16; ECF No. 11-1 at 34-39, 88-95.)  And

although Plaintiff alleges Defendant paid taxes on properties that he did not own, denied the

request to remove those properties from his account, and failed to return the refunded money,

(AC ¶¶ 20, 44), Defendant responded to Plaintiff's complaints with a letter explaining that while

incorrect parcels had been erroneously added to the account, the payments for these parcels used

corporate advances and thus no refund was due to Plaintiff – in other words, that there was no

error in failing to refund him.  (ECF No. 11-1 at 121-22.)  The letter also provided the payment

and escrow analysis history to explain why there were shortages in the account.  (*Id.*)  Finally,

15

the letter attached documents that Defendant relied upon and provided a telephone number that Plaintiff could call for further assistance.  (*Id.* at 122.)

Accordingly, this letter complied with § 1024.35's requirement that a loan servicer conduct a reasonable investigation and provide specific information to the borrower.  *See* 12 C.F.R. § 1024.35(e)(1)(i)(B); *see also Izmirligil v. Select Portfolio Servicing, Inc.*, No. 18-CV-7043, 2020 WL 1941319, at *6 (E.D.N.Y. Apr. 22, 2020) (defendant provided sufficient response to one of plaintiff's QWRs because it explained why it had imposed a policy, what charges were made, and when charges ceased, and provided payment history and other documents); *Ledgerwood v. Ocwen Loan Servicing*, No. 15-CV-1944, 2015 WL 7455505, at *3 (E.D.N.Y. Nov. 21, 2015) (no violation of RESPA § 2605 where defendant responded to plaintiff's QWR comprehensively by explaining reason for late fees on account).  "While [Defendant's] decision may not have been to plaintiff's liking, plaintiff has not alleged facts showing that [Defendant's] response was inadequate under the applicable regulations."  *Hicks v. Wells Fargo Bank, N.A.*, No. 19-CV-6253, 2020 WL 3172771, at *8 (W.D.N.Y. June 15, 2020). Defendant was not required to provide the relief Plaintiff sought so long as it met the requirements set forth in § 1024.35(e)(1)(i)(B), which it did.  Defendant's motion to dismiss this claim is therefore granted.

### 4.    Damages

Defendant also argues Plaintiff has failed to plausibly allege recoverable damages proximately caused by the alleged RESPA violations.  (D's Mem. at 6-8.)  "[T]o survive a motion to dismiss a plaintiff bringing a RESPA claim must, in addition to showing defendant's failure to comply with the provisions, identify damages that he or she sustained as a result of defendant's alleged violation(s)."  *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526,

539 (E.D.N.Y. 2015). Thus, a plaintiff's failure to adequately plead actual or statutory damages serves as an independent basis for dismissal of RESPA claims. *See Ramirez*, 2021 WL 9564023, at \*10.

But I need not address Defendant's damages argument because Plaintiff's RESPA claims fail for the reasons set forth above. Because Plaintiff is *pro se*, the Court has also considered whether Plaintiff's allegations plausibly raise a claim under any other section of RESPA for which a private right of action exists, *see* 12 U.S.C. § 2614 (providing statute of limitations for actions brought in district court pursuant to sections 2605, 2607 or 2608); *Murray v. Newrez LLC*, No. 24-CV-6160, 2025 WL 1158090, at \*5 (E.D.N.Y. Apr. 21, 2025) ("Borrowers have a private right of action to recover any actual damages caused by a servicer's failure to comply with any provision of Section 2605."); *Nelson v. JPMorgan Chase Bank, N.A.*, 707 F. Supp. 2d 309, 317 (E.D.N.Y. 2009) (sections 2603 and 2604 do not provide for a private right of action), and concludes that they do not.

Accordingly, Plaintiff's RESPA claims are dismissed.

## B.    New York State Law Claims

In his AC, Plaintiff alleges that Defendant violated:  (1) 3 N.Y.C.R.R. 419(2) by making an incorrect escrow analysis and placing Plaintiff in a deficiency, (AC at 1); (2) 3 N.Y.C.R.R. 419(B) by failing to credit the overpayments to the balance of the loan or return the money to Plaintiff as requested, (AC at 2); and (3) 3 N.Y.C.R.R. 419(6) by failing to comply with Plaintiff's request to correct the error in paying school taxes on properties that he did not own, adjust the monthly payments, or return the overpayments, (AC at 2). Defendant argues first that Plaintiff's citations are facially defective as there is no 3 N.Y.C.R.R. 419(B), and second that

17

Part 419 does not provide a private right of action.  (D's Mem. at 8-9.)  Defendant also argues

Plaintiff fails to plausibly allege noncompliance with the provisions of Part 419.  (*Id.* at 9.)

"Part 419 . . . is a regulatory scheme applicable to certain mortgage loan servicers and

other entities engaged in servicing mortgage loans."  *Bloom v. Nationstar Mortg. LLC*, 154

N.Y.S.3d 395, 399 (Sup. Ct. 2021), *aff'd*, No. 10147/18, 2026 WL 1315816 (N.Y. App. Div.

May 13, 2026).  New York courts have held that there is no private right of action under Part 419

because it is enforceable by New York's Department of Financial Services.  *See, e.g.*, *Moultrie v.*

*Cenlar*, No. 24-CV-2012, 2026 WL 205938, at *3 (E.D.N.Y. Jan. 27, 2026) (claim under 3

N.Y.C.R.R. § 419.3 failed because there is no private right of action under Part 419); *Bloom*, 154

N.Y.S.3d at 399-400 (no private right of action under 3 N.Y.C.R.R. § 419.9, renumbered

§ 419.4, because it is enforceable by NYSDFS, it does not explicitly provide for private right of

action, and no legislative intent to create a private right of action could be fairly implied); *1077*

*Madison Street, LLC v. Smith*, No. 13-CV-7182, 2015 WL 5793427, at *16 (E.D.N.Y. Sept. 30,

2015) ("Part 419 does not create a private cause of action."), *aff'd*, 670 F. App'x 745 (2d Cir.

2016) (summary order); *Wells Fargo Bank, N.A. v. Vanderkamp*, 5 N.Y.S.3d 331, 2014 WL

5642261, at *5 (Sup. Ct. 2014) (unpublished table decision) (noting no court has recognized

private right of action under Part 419 and declining to do so).  Because there is no private right of

action, Plaintiff's claims under various sections of Part 419 must be dismissed.  I therefore

decline to address Defendant's remaining arguments as to Plaintiff's state law claims.

## IV.   LEAVE TO AMEND

Finally, I consider whether Plaintiff should be granted leave to amend, which should be

freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound

discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105

(2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint after having the benefit of a pre-motion letter from Defendant, (*see* ECF No. 6), and the discussion at the pre-motion conference, (*see* Minute Entry dated Sept. 24, 2025).  Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *Williams v. Time Warner Inc.*, No. 09-CV-2962, 2010 WL 846970, at *7-8 (S.D.N.Y. Mar. 3, 2010) (leave to amend properly denied where plaintiff declined to amend after being advised of arguments for dismissal and complaint's deficiencies), *aff'd*, 440 F. App'x 7 (2d Cir. 2011) (summary order); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance*

*Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies."); *Elmore v. Atieh*, No. 23-CV-508, 2024 WL 770768, at *2 (N.D.N.Y. Feb. 26, 2024) (denying leave to amend because "the extension of special solicitude to *pro se* litigants requires only *one . . .* opportunity to amend" and plaintiff "failed to cure the defects despite having been given an adequate notice of them and a reasonable opportunity to cure them") (emphasis in original); *see also Solomon v. Fordham Univ. Admin., Rose Hill Campus*, No. 22-887, 2023 WL 5689712, at *3 (2d Cir. Sept. 5, 2023) (summary order) (leave to amend properly denied where *pro se* plaintiff was permitted to amend at least three times and did not persuasively argue why a fourth amendment should be permitted); *Pottetti v. Educ. Credit Mgmt. Corp.*, No. 19-CV-4479, 2020 WL 5645194, at *7 (E.D.N.Y. Sept. 22, 2020) (no need to grant leave to amend where *pro se* plaintiff "has had multiple opportunities to properly state his claims").

Although in its pre-motion letter Defendant did not raise the issues associated with Plaintiff's claim under 12 C.F.R. § 1024.35, (*see* ECF No. 6), as that claim was added in the Amended Complaint, it does not appear that Plaintiff could amend to cure the deficiency in his pleading with respect to the NOEs, as he did not contend in his opposition (despite introducing new exhibits on other issues) that they contained all of the required information or were sent to the specified address. Moreover, even if given the opportunity to amend, Plaintiff could not plausibly allege that Defendant violated its duties under § 1024.35(e) because, as explained, Plaintiff provided the Court with Defendant's responses to his complaints, which demonstrate that Defendant complied with its obligations even if Plaintiff was unhappy with Defendant's determination. Thus, amendment of Plaintiff's § 1024.35 claim would be futile. The same is

true for Plaintiff's New York state claims. Although not asserted in Plaintiff's initial complaint

and thus not raised in Defendant's pre-motion letter, even if given the opportunity to amend,

Plaintiff could not cure the deficiency in his state law claims as the problem is not a lack of facts

but rather a lack of private right of action. As such, amendment of Plaintiff's state law claims

would be futile as well. *Cf. O'Callaghan v. City of N.Y.*, No. 16-CV-1139, 2016 WL 7177509, at

*10 (S.D.N.Y. Dec. 8, 2016) (amendment would be futile where cause of action plaintiff sought

to add did not exist in New York).

Further, Plaintiff has not asked to amend or otherwise suggested that he is in possession

of facts that would cure the other deficiencies identified in this ruling. *See Bank v. Gohealth,

LLC*, No. 21-1287, 2022 WL 1132503, at *1 (2d Cir. Apr. 18, 2022) (summary order) ("[W]here

the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner

which would survive dismissal, opportunity to replead is rightfully denied."); *TechnoMarine SA

v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if

plaintiff fails to specify how amendment would cure the pleading deficiencies in the

complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in

dismissing claim with prejudice in absence of any indication plaintiff could or would provide

additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-

50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to

amend where there was no indication as to what might have been added to make the complaint

viable and plaintiffs did not request leave to amend); *Brown v. N.Y.C. Dep't of Educ.*, No. 20-

CV-2424, 2022 WL 4364600, at *4 n.3 (S.D.N.Y. Sept. 21, 2022) (denying leave to amend

where *pro se* plaintiff did not provide additional facts to cure identified deficiencies); *see also

Todd v. Fields*, No. 20-CV-3608, 2022 WL 596829, at *6 (S.D.N.Y. Feb. 25, 2022) ("While

courts should be more lenient when considering a *pro se* party's motion to amend than when considering that of a represented party, leave to amend is properly denied where all indications are that the *pro se* plaintiff will be unable to state a valid claim.").

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 13), and close the case.

**SO ORDERED.**

Dated:  June 29, 2026
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

22